THE STATE EX REL. STATE HIGHWAY COMMISSION v. GUY B. PARK, Judge of Circuit Court of Holt County.—15 S. W. (2d) 785.

Court en Banc, March 16, 1929.

*Edgar Shook* and *Lynn M. Ewing* for relator.

*Harry M. Dungan* for respondent.

ATWOOD, J.—This is an original proceeding in mandamus instituted at the relation of the State Highway Commission to compel Honorable Guy B. Park, Judge of the Circuit Court of Holt County, to assume full jurisdiction of a condemnation suit which it has brought in said court, and to appoint commissioners therein to assess damages that would be sustained by the owners of two tracts of land therein described on account of the taking of materials therefrom to construct and maintain a state highway designated by law, said lands being along and adjacent to said state highway. Our alternative writ was issued, service waived and return filed.

From relator's petition it appears that in the condemnation proceeding plaintiff sought to acquire for state highway right-of-way two tracts of land belonging to defendant John G. Fries and two tracts of land belonging to defendant Joseph D. Morris; that plaintiff also sought to acquire the right to extract and remove earth from two other tracts of land belonging to said defendants and necessary for the purpose of grading and maintaining the roadway and approaches to a bridge on said highway; that upon presentation of motion by defendants challenging the court's jurisdiction of the parties and subject-matter in that proceeding the court refused and still refuses to appoint commissioners to view or to proceed further to condemn the two parcels of land last above mentioned, stating ''that it is the opinion of the court that said third parcels are being condemned for borrow

pit purposes and only for acquiring the dirt therefrom, and that same cannot be condemned under provisions of Article 2, Chapter 13, Revised Statutes 1919, and that land condemned for borrow pit purposes for acquiring of dirt only, as petitioned for in this case, must be condemned under the procedure provided by Section 9877, Revised Statutes 1919, and that the Circuit Court of Holt County has no jurisdiction in this cause to condemn land for such purposes;'' that said motion was overruled as to the land sought to be condemned for right of way purposes and commissioners were appointed to assess damages and benefits which the owners would sustain thereby.

Respondent's return to our alternative writ, among other things, denies that he has authority to entertain a petition by relator for the condemnation of lands for borrow pit purposes only; denies that the acquisition of said borrow pits is a necessity; denies that plaintiff in said condemnation suit ever attempted to agree with defendants as to the value of said lands for borrow pit purposes; and denies that relator herein has no other adequate remedy.

From the petition filed in the condemnation proceeding and set forth in relator's abstract of the record it appears that the suit is brought under the provisions of an act of the General Assembly approved August 4, 1921, found at page 131 of the Laws of Missouri of 1921, 1st Ex. Sess., which, among other things, empowers the State Highway Commission to acquire right-of-way and road building materials necessary for the location and construction of state highways by purchase, lease or exercise of the right of eminent domain.

The right to acquire materials as well as right-of-way by exercise of the power of eminent domain is well recognized. In Lewis on Eminent Domain (3 Ed.) Section 411, it is said: ''All kinds of property, and every variety and degree of interest in property may be taken under the power of eminent domain.'' In Nichols on Eminent Domain (2 Ed.) page 66, note 55, it is held that the right to excavate material for constructing public works may be condemned; and Cooley's work on Constitutional Limitations (8 Ed.) pages 1113, 1114, holds that under the right of eminent domain, timber, stone and gravel may be acquired with which to make or improve the public ways. The General Assembly thus had power to provide that road building materials as well as right of way might be acquired by exercise of the right of eminent domain, and it did so provide in Section 21 of said act known as the Centennial Road Law, page 141, Laws of Missouri 1921, 1st Ex. Sess., which is as follows (italics ours):

''*Whenever* the construction or location of any state highway, or part thereof, or *the obtaining of* right of way, or *road-building materials for the construction or maintenance of* such *roads shall require that private property be* taken or *damaged;* or where a change of gradient, a detour, or an elimination of grade crossing is to be

effected; or where the proper and economical location of a highway requires the changing of the channel of any stream, or the right of way to any deposit of road building material; or any water supply; or any water-power sites and lands to be used in connection therewith, which may be necessary for the proper and economical construction and maintenance of said roads, *then the commission,* in the name of the State of Missouri, *shall have the right to purchase or lease* the necessary land, or the right of way to any deposit of road material; water supply, or any water-power sites and lands to be used in connection therewith, or *materials from the owner thereof, and if compensation therefor cannot be agreed upon, just compensation may be ascertained and the property acquired and paid for in the manner as provided by law for the exercise of the right of eminent domain by railroad corporations in this State,* and in determining the damages or compensation to be paid the owner thereof, the court or jury shall take into consideration the benefits to be derived by the owner as well as the damages sustained thereby.'' Whether it be necessary to take land itself or only certain materials therefrom it is obvious that in either case the taking is an exercise of the right of eminent domain, and the above section plainly states that it shall be done ''in the manner as provided by law for the exercise of the right of eminent domain by railroad corporations in this State.''

Section 9850, Revised Statutes 1919, relates to general and additional powers of railroad companies, and the only provision pertinent to the issue here made is the third clause which empowers a railroad corporation ''to lay out its road, not exceeding one hundred feet in width, and to construct the same; and, for the purpose of cuttings and embankments, to take as much more land as may be necessary for the proper construction and security of the road, and to cut down any standing trees that may be in danger of falling on the road, making compensation therefor as provided in this chapter and Article II of Chapter 13, for lands taken for the use of the company.'' But, the procedure here in question relates to the mere taking of materials and not the land itself, and while Article II of Chapter 13, Revised Statutes 1919, relates generally to condemnation proceedings by corporations, yet it is apparent from the portion of Section 9850 above quoted that the procedure for the taking of land itself and not for the mere taking of materials therefrom is referable to it. If just compensation is to be ascertained and paid for earth to be taken from land for road building purposes ''in the manner as provided by law for the exercise of the right of eminent domain by railroad corporations in this State,'' the legislative plan prescribed for railroad corporations in that particular exercise of the right of eminent domain must be followed, and it is not found in Article II of Chapter 13. The method by which a railroad corporation may take material

from land necessary for the construction and operation of its road and pay the owners just compensation for the damages to the land occasioned thereby is prescribed in Section 9877, Revised Statutes 1919, and jurisdiction to entertain such a proceeding is thereby vested in the justice of the peace courts and not in the circuit court of the county.

In support of their contention that the circuit court has jurisdiction of such condemnation proceedings counsel for relator say that "it is only Section 9850 as it refers to Article 2, Chapter 13, that is meant by Section 21 of the Centennial Road Law." If such was the intention of the members of the General Assembly the reference would have been specific, but the language of the act shows no legislative attempt to incorporate or extend the operation of one statute to the exclusion of another. The reference is to the "law for the exercise of the right of eminent domain by railroad corporations in this State." Section 9877 is obviously a part of that law, particularly relates to the subject of the adopting statute and is necessarily embraced by the reference made.

Counsel for relator also urge that the phrase, "in the manner as provided by law for the exercise of the right of eminent domain by railroad corporations," above quoted from the Centennial Road Law, is ambiguous and in order to ascertain the legislative intent it is necessary to examine statutes passed at the same session upon the same subject; citing the act set forth on pages 23, 24, Laws of Missouri of 1921, First Extra Session, approved August 15, 1921, enabling the Highway Department with the written consent of the Governor to acquire by lease, purchase or condemnation any land containing sand, gravel, clay or other road building or road maintenance material, and in case it is necessary to condemn such lands providing that the procedure shall be "in accordance with the provisions of Article 2, Chapter 13, of the Revised Statutes of Missouri for the year 1919," and also citing Section 10907, Revised Statutes 1919 (subsequently repealed by enactment of the Centennial Road Law), which provided for the acquisition of lands necessary for state roads and where necessary to condemn the same that the procedure should be as "provided by Article II, Chapter 13, of the Revised Statutes of Missouri of 1919." We do not believe that the phrase is at all ambiguous, but a consideration of the statutes cited does not strengthen relator's position. These two statutes relate solely to the acquisition of land while the part of the proceeding here called in question relates solely to the damages resulting to the owners of land from which materials are proposed to be taken. Plaintiff's petition in this condemnation suit plainly states that as to this land it "only seeks to acquire the right to extract and remove earth for the purposes of grading and maintaining the roadway and approach

to a bridge," and that "upon completion and acceptance of the grading and surfacing of the roadway and approach to the bridge . . . all rights of every kind and character of plaintiff" therein "shall forever cease and terminate and the owners thereof shall thereafter forever be entitled to the exclusive, absolute and uninterrupted use" thereof. This distinction clearly obtains in Sections 9850 and 9877 above cited as a part of the eminent domain law of this State applicable to railroad corporations, and the same procedure must be followed by the Highway Commission in like cases.

Counsel for relator also say that if we hold that the procedure indicated in Section 9877 must be followed "then the acquisition of lands for any portion of any state highway would necessarily be split into two proceedings, one proceeding being in the circuit court to obtain the right of way and one proceeding before a justice of the peace to secure lands for borrow-pit purposes." The same objection might as well have been or even now be urged against the statute in its application to railroad construction, but it has remained in force without change for many years and has proved workable. If the suggestion has merit it should be met by legislative action rather than strained judicial construction.

The question of jurisdiction was properly ruled by respondent, and the peremptory writ herein is denied. All concur, except *Walker,* J., absent, and *Frank, J.,* not sitting.